United States District Court
Southern District of Texas
**ENTERED**
February 13, 2019
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ROSE PENA, Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:18-01888 |
| HOUSTON COMMUNITY COLLEGE, Defendant. | § | |

**MEMORANDUM AND ORDER**

Before the Court in this employment discrimination case is Defendant's Motion to Dismiss Plaintiff's First Amended Original Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss" or "Motion") [Doc. # 13]. Plaintiff has filed a response.[1] Defendant has not filed a reply, its time to do so has expired, *see* Hon. Nancy F. Atlas, Court Procedures and Forms, R.7(A)(4), and the Motion is now ripe for decision. Having reviewed the parties' briefing, relevant matters of record, and pertinent legal authorities, the Court **grants in part and denies in part** Defendant's Motion to Dismiss.

---

[1] Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Response") [Doc. # 16].

## I. BACKGROUND

As this case comes to the Court on a Rule 12(b)(6) motion to dismiss, the facts set forth below are drawn from Plaintiff Rose Pena's First Amended Original Complaint ("Amended Complaint") [Doc. # 12].

Pena is a 62-year-old woman of "Hispanic (Mexican) national origin" who "is not African American." She has worked for Defendant Houston Community College ("HCC"), for over 34 years. HCC is a public community college and a Texas governmental entity.

In 2015, Melissa Gonzalez, the Chief of Staff for HCC's Chancellor, asked Pena if she would consider becoming the Manager of Board Services as the previous Manager, Sharon Wright, was leaving HCC. At the time of the request, Pena's job title was "Campus Administrator, Northwest." Pena was told HCC "really wanted her" in that position and that HCC believed she was qualified. Pena accepted the position as Manager of HCC's Board Services and she was hired for the position in October 2015.

HCC failed to provide Pena with training or guidance for her new position. Pena requested specific and detailed training from Gonzalez, to no avail. After Gonzalez denied Pena's request for training, Pena repeatedly requested a transfer to her previous position as Campus Administrator, which had not been filled. Pena was told that HCC was not permitting transfers, an assertion Pena contends is false

because several employees had been transferred in responses to complaints against HCC's Vice Chancellor. Pena's previous position remained unfilled until March or April 2016.

In March 2016, HCC rehired Sharon Wright. HCC placed Wright, who is African American in a newly created position as "Director of Board Services" and assigned her the "bulk" of Wright's former and Pena's current job duties as "Manager of Board Services." Pena asserts that she was replaced by Wright despite the latter's different job title. Wright's annual salary was $105,000 ($20,000 greater than Pena's salary). As a result of Wright's hiring, Pena alleges, she lost "almost all" of her job duties and was left with only menial tasks. Pena was also excluded from high level meetings. HCC transferred Pena's office to a storage closet, which was generally accessible to, and frequented by, HCC employees.

Pena also alleges that Wright treated Reatha Bell, another HCC employee who is African American, more favorably than Pena with respect to workplace policies. Bell was allegedly permitted to come in when she wished, have her sister come in for an hour to have conversations, conduct personal business on her HCC computer, engage in personal printing with HCC equipment, and online shop. In contrast, Pena was allegedly told not to talk to non-employees during work hours,

asked "how long she was going to be"[2] and told not to submit a request for time off because it was allegedly too early to submit.

Pena alleges she complained that her treatment was discriminatory "up to six times" to HCC managers. She complained to Tom Anderson at Human Resources and David Cross "at the EEOC office." In response to her complaints, Wright, Gonzalez, and Anderson told Pena "on many occasions" that they thought she should retire. Wright made comments about Pena retiring "at least twice," Gonzalez made a comment about Pena retiring "at least once," and Anderson told Pena that HCC thought Pena "would just retire when . . . Wright came back."

Pena attempted to transfer to a different job within HCC, applying for positions as "Advisor," "Senior Advisor," "Assistant Dean, "Advisor in Education," "Campus Manager," and "Program Director in P-16." Pena asserts she previously performed the duties associated with these jobs and "was the best qualified." Pena did not receive an interview for Program Director in P-16. Pena alleges that HCC "failed to place a Hispanic, of any descent, let alone Mexican heritage in any of these positions."

In early 2017, Pena filed an EEOC "Charge of Discrimination." In response, HCC "failed to take any action or change [its] treatment of [Pena]."

---

2 Pena's Amended Complaint does not clarify what this comment refers to.

In August 2017, HCC awarded Pena the position as "Campus Manager at the Southeast location." This job allegedly paid less[3] and required a longer commute. Pena requested higher compensation and was told that HCC was not able to increase her salary. Pena alleges that when one of her African American coworkers gave two weeks' notice of his quitting, HCC increased his salary by re-labeling his position as "Senior" without changing his duties.

In October 2018, HCC informed Pena that HCC was eliminating all five of the Campus Manager positions at the Southeast location. Pena was informed that she could apply for an open campus manager position.[4]

Meanwhile, in June 2018, Pena sued HCC, alleging a variety of causes of action. Pena alleged discrimination, hostile-work environment, and retaliation on account of her race, national origin, and age under Title VII and Age Discrimination in Employment Act ("ADEA"). She further alleged discrimination on account of her race and national origin under 42 U.S.C. § 1981 via § 1983.

On August 14, 2018, HHC moved to dismiss all Pena's claims. *See* Doc. # 6. At a scheduling conference held on October 9, 2018, the Court orally granted

---

[3] It is unclear whether the job paid less relative to Pena's position as Manger of HCC's Board Services or as Campus Administrator, Northwest.

[4] Pena does not allege that she has actually been fired or is no longer working for HCC.

HCC's motion and dismissed Pena's claims without prejudice. *See* Hearing Minutes and Order [Doc. # 10] dated October 9, 2018. The Court granted Pena leave to amend her complaint to fix the pleading defects identified in HCC's motion to dismiss.

On November 19, 2018, Pena filed her First Amended Original Complaint [Doc. # 12]. Pena dropped her hostile work environment claim and alleges discrimination and retaliation on account of her race, national origin, and age under Title VII, ADEA, and § 1981.

On December 3, 2018, HCC filed its Motion to Dismiss [Doc. # 13], seeking dismissal of all Pena's claims.

## II. <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012).

When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Rule 8 "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

## III. DISCUSSION

Pena alleges discrimination and retaliation on account of her race, national origin, and age under Title VII, ADEA, and 28 U.S.C. § 1981. HCC moves to dismiss all Pena's claims. The Court **dismisses with prejudice** Pena's § 1981 claim and her two retaliation claims. The Court will **not** dismiss Pena's Title VII and ADEA discrimination claims.

### A. Section 1981

#### 1. Legal Standard for Section 1981 Claims

"Section 1981 ensures that all persons in the United States have the same right to make and enforce contracts and prevents impairment of those rights by government and non-government actors." *Meyers v. La Porte Indep. Sch. Dist.*,

277 F. App'x 333, 335 (5th Cir. 2007). While § 1981 "provides an independent cause of action when a plaintiff is suing a private actor," a "plaintiff alleging racial discrimination against a state actor must assert that claim under § 1983." *See Vouchides v. Hous. Cmty. Coll. Sys.*, No. CIV.A. H-10-2559, 2011 WL 4592057, at *7 (S.D. Tex. Sept. 30, 2011). It is undisputed that HCC is a state actor. Pena must therefore assert a cause of action under § 1983.

Section 1983 does not impose *respondeat superior* liability. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Instead, Pena's § 1983 cause of action HCC must rely on a theory of municipal liability. "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578 (footnote omitted). It is "necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *See id.* "The description of a policy or custom and its relationship to the underlying

constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *See Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

### 2. Pena's § 1981 Claim Will Be Dismissed

Pena describes HCC's official policy in her Amended Complaint as follows:

> Defendant's actions of favoring African Americans in Plaintiff's department was a continuing violation as part of a continuing system of discriminatory practices in that department that was part of a widespread practice (including bringing Sharon Wright back for a position without a job description at a $20,000 increase) of discrimination that constituted a custom representing Defendant's actual policy.

Amended Complaint [Doc. # 12], ¶ 5.37. Pena also alleges various discrete acts of favoritism by HCC personnel towards African American employees. *See id.* ¶¶ 5.18, 5.29.

Pena's allegations do not sufficiently plead municipal liability for two reasons. First, the policy or custom Pena describes—favoring African Americans in "a continuing system of discriminatory practices in the department that was part of a widespread practice . . . of discrimination—is conclusory and insufficiently specific. *See Spiller*, 130 F.3d at 167 (affirming a Rule 12(b)(6) dismissal of a § 1983 claim for deficient allegations of municipal liability when the defendants' alleged policy was "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest"). Second, the alleged instances of

favoritism towards African Americans do not suffice as a policy, as isolated acts of employees do not establish municipal liability. *See Piotrowski*, 237 F.3d at 578.

Pena's § 1981 claim is **dismissed with prejudice** for failure to allege municipal liability, an essential element of her claim.

## B. Title VII and ADEA Retaliation

### 1. Legal Standards for Title VII and ADEA Retaliation Claims

The elements of a retaliation claim under Title VII and the ADEA are: (1) the plaintiff engaged in a protected activity; (2) the plaintiff suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (Title VII); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (ADEA). *See also Richards v. JRK Prop. Holdings*, 405 F. App'x 829, 831 (5th Cir. 2010) (stating these as the elements the plaintiff must allege facts to show at the 12(b)(6) stage).

To establish causation, the third element of the retaliation cause of action, a plaintiff must ultimately demonstrate but-for causation. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (Title VII); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) (ADEA).

### 2. Pena's Title VII and ADEA Retaliation Claims Will Be Dismissed

Pena filed an EEOC Charge of Discrimination in "early 2017." Amended Complaint, ¶ 5.31. Pena also alleges that she engaged in protected activity by complaining to "Tom Anderson in Human Resources and to David Cross at the EEOC Office" "up to six times" of race and age discrimination, without specifying dates. *Id.* ¶ 5.20. Pena further alleges, again without identifying any dates, that HCC retaliated against her "by refusing to consider [her], hire her or transfer [her] to [a] position for which she was well qualified, most highly qualified and positions which she had performed before." *Id.* ¶ 5.30. As noted, Pena inconsistently alleges that, in August 2017, after she filed the EEOC Charge of Discrimination, she was given a position as "Campus Manager" at the Southeast location." *Id.* ¶ 5.26.

Pena's factual allegations fail to establish a causal link between her protected activity and HCC's retaliatory actions. Pena's own allegations suggest that the denials of her transfer requests predate her protected activity.[5] While Pena

---

5 Plaintiff alleges that in October 2018, after this suit was filed and one month before she filed her Amended Complaint, that HCC "informed Plaintiff that it was eliminating all five of the campus manager positions at just her campus." Amended Complaint, ¶ 5.34. "Defendant has further informed Plaintiff that two campus manager positions would be posted campus wide as well as open posting and Plaintiff and her fellow campus manager would have to re-apply for those (continued…)

later complained of discriminatory conduct, Pena's allegations do not support a causal link between her complaints and these denials of transfers. Courts find no causal link between the protected activity and adverse employment action when the adverse employment action predates the protected activity. *See Miceli v. JetBlue Airways Corp.*, No. 18-1345, 2019 WL 336516, at *7 (1st Cir. Jan. 28, 2019) ("[W]hen problems with an employee predate any knowledge that the employee has engaged in protected activity, it is not permissible to draw the inference that subsequent adverse actions, taken after the employer acquires such knowledge, are motivated by retaliation." (citation omitted)); *Verma v. Univ. of Pa.*, 533 F. App'x 115, 119 (3d Cir. 2013) ("[T]his Court has declined to infer such a causal link where an employee's negative performance evaluations predated any protected activity."); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("The actions that led to [plaintiff's] probation and termination began *before* her protected activity, belying the conclusion that a reasonable factfinder might find that [her employer's] activity was motivated by [plaintiff's] . . . complaints."); *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("We hold that, in a

---

(continued…)
positions. Plaintiff has applied for one other position as well." *Id.* These allegations do not support Plaintiff's retaliation claims as five position, not just Plaintiff's are being eliminated and no decisions have been made about Plaintiff's applications.

retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."); *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."). Pena fails to plead an essential element of her Title VII and ADEA retaliation claims, and thus her claims will be **dismissed with prejudice**.

### C. Title VII and ADEA Discrimination

#### 1. Legal Standard for Title VII and ADEA Discrimination Claims

To establish a *prima facie* case[6] of race or national origin discrimination under Title VII, Pena must show that she: (1) "is a member of a protected class";

---

[6] While neither party raises this point, Fifth Circuit "precedent is clear" that plaintiffs "need not make out a *prima facie* case of discrimination in order to survive a rule 12(b)(6) motion to dismiss for failure to state a claim" if there are allegations sufficient to plead a plausible discrimination claim on the merits. *See Whitlock v. Lazer Spot, Inc.*, 657 F. App'x 284, 286 (5th Cir. 2016) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). The "ultimate question" for Pena's discrimination claims is whether the HCC "took the adverse employment action against a [her] because of her protected status." *Raj*, 714 F.3d at 331 (alteration in original) (quoting *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 576 (5th Cir. 2004)). This discriminatory intent can be shown by alleging facts sufficient to show the elements of *a prima facie* case. *See Body by*

(continued…)

(2) "was qualified for [her] position"; (3) "was subject to an adverse employment action"; and (4) "was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *See Harrison v. Corr. Corp. of Am.*, 476 F. App'x 40, 43 (5th Cir. 2012) (per curiam) (quoting *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)).

To establish a *prima facie* case of age discrimination under the ADEA, Pena must show that she: (1) is over 40; (2) was qualified for her position; (3) "suffered an adverse employment decision"; and (4) she was "replaced by someone younger or treated less favorably than similarly situated younger employees." *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013). Pena alternatively can establish a *prima facie* case with direct evidence, *i.e.*, statements "showing discriminatory motive on its face." *See Battiste v. Clerk of Court, Office of Avoyelles Par.*, No. 1:17-CV-00740, 2018 WL 4009118, at *2 (W.D. La. Aug. 22, 2018).

---

(continued…)
*Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 387 (5th Cir. 2017). As both sides rely on the *prima facie* case analysis, the Court addresses the motion accordingly.

### 2. Pena's Title VII and ADEA Discrimination Claims

#### a. Pena States a Claim for Title VII Discrimination

Pena adequately alleges the *prima facie* elements of a Title VII discrimination claim. Pena pleads: (1) she is a member of a protected class;[7] (2) she was qualified to be Manager of Board Services; (3) she suffered an adverse employment action because HCC removed the bulk, if not all, of substantive her job duties; (4) her office was moved to a non-restricted area that all employees could enter, and (5) she was functionally replaced by someone outside her protected class (Sharon Wright). Pena also alleges she suffered disparate treatment in her work rules and conditions relative to her similarly situated African American coworkers.

HCC asserts that Pena's pleadings demonstrate she was not qualified for her position as Manager of Board Services. Liberally construing Pena's Amended Complaint, the Court concludes that Pena adequately pleaded she was qualified. Pena pleaded that she was told by HCC's Chancellor's Chief of Staff that "they really wanted her in" the Manager of Board Services position and that HCC "believe[ed]" her "to be qualified for the" position. Pena alleges that she did not

---

7 *See Warren v. City of Carlsbad*, 58 F.3d 439, 442 (9th Cir. 1995) (holding Mexican descent is a protected class).

receive any training once she was given the position and there was no one available to help her make the transition. Pena does not allege, however, that she was unqualified. At this stage of the case, the Court declines to conclude as a matter of law that Pena was not qualified for her position as Manager of Board Services.

HCC next contends that Pena failed to allege a specific adverse employment action. Not so. Pena alleged that HCC's "adverse treatment" involved stripping her of her job duties. This qualifies as an adverse employment action. "In certain instances, a change in or loss of job responsibilities . . . may be so significant and material that it rises to the level of an adverse employment action." *See Thompson v. City of Waco*, 764 F.3d 500, 504 (5th Cir. 2014); *see also Dahm v. Flynn*, 60 F.3d 253, 257 n.2 (7th Cir. 1994) ("[I]f the duties of an assistant prosecutor were changed from trying cases to sharpening pencils, that change would be materially adverse . . . ."). Pena's allegations establish a "significant and material" loss of job responsibilities. *See Thompson*, 764 F.3d at 504. She alleged that HCC took "away almost all of her job duties," and left her "only with the most menial" responsibilities. Pena specifically alleges she was left with responsibilities for setting up for meetings (*e.g.*, pouring water, putting out candy, setting up name plates), or ministerial duties during the sessions (specifically, working the PowerPoint). She alleges also that she was excluded from high-level meetings.

Reflecting her diminished duties, Pena's office was transferred to a storage closet that other employees frequented, apparently to make photocopies. These allegations suffice to demonstrate Pena suffered an adverse employment action. Pena's Amended Complaint sufficiently alleges the four elements of a *prima facie* case for Title VII discrimination. The Court declines to dismiss Pena's Title VII discrimination claim.

**b. Pena States a Claim for ADEA Discrimination**

Pena adequately alleges the *prima facie* elements of an ADEA discrimination claim. Pena alleges: (1) she is 62; (2) she was qualified for her Manger of Board Services position; and (3) she suffered an adverse action by having her job duties stripped. Pena, however, does not allege she was replaced by someone younger or that she was treated "less favorably than similarly situated younger employees." *See Leal*, 731 F.3d at 410-11. Indeed, Pena makes no allegations about the age of other HCC employees. Instead, Pena contends that comments she received from her direct supervisor, HCC's chief of staff, and HCC's director of human resources "show[ ] discriminatory motive on [their] face." *See Battiste*, 2018 WL 4009118, at *2.

Pena's allegations of age-related comments suffice at this stage of the case. Repeated ageist comments demonstrate a *prima facie* case for age discrimination. *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004). While an

employer "may make reasonable inquiries into the retirement plans of its employees," it remains the case that "retirement inquiries can sometimes be so unnecessary and excessive as to constitute evidence of discriminatory harassment." *See Montgomery v. John Deere & Co.*, 169 F.3d 556, 560 (8th Cir. 1999). *See also Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d 202, 208 (5th Cir. 1986) ("[T]he jury could have believed that [the employer's] need to plan for vacancies motivated its first inquiry into [the plaintiff's] retirement plans. However, the jury could also have believed that the later, repeated inquiries were unnecessary and constituted intentional harassment."). Here, the Court cannot conclude that the several retirement inquiries allegedly made by HCC management and/or human resources individuals were not "unnecessary and excessive." *See Montgomery*, 169 F.3d at 560. Pena alleges that when she complained about her treatment, she was told on "many occasions" by at least three different HCC employees that they thought she would retire.

Pena's sufficiently alleges the elements of a *prima facie* case for ADEA discrimination. HCC's Motion is denied regarding Pena's ADEA discrimination claim.

## IV. ORDER

It is hereby

**ORDERED** that Defendant's Motion to Dismiss [Doc. # 13] is **GRANTED in part and DENIED in part**. It is further

**ORDERED** that Plaintiff's 28 U.S.C. § 1981 claim is **DISMISSED with prejudice**. It is further

**ORDERED** that Plaintiff's Title VII and ADEA retaliation claims are **DISMISSED with prejudice**.

SIGNED at Houston, Texas, this 13th day of **February, 2019.**

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE



P:\ORDERS\11-2018\1888MDism.docx 190213.1538